UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CAROLYN BYRD,                                      Case No. 1:12-cv-455

       Plaintiff,                                  Weber, J.
                                                   Bowman, M.J.
   v.

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Carolyn Byrd filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled. *See* 42 U.S.C. §405(g). Plaintiff, proceeding pro se, appears to present three claims of error for this Court's review. As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

In February 2008, Plaintiff filed an application for Disability Insurance Benefits (DIB), alleging a disability onset date of October 6, 2007 due to physical and mental physical impairments. After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). An administrative hearing was held on April 20, 2010. (Tr. 29-64). At the hearing, ALJ Deborah Smith heard testimony from Plaintiff and Janet Chapman, an impartial vocational expert. On June 18, 2010, the ALJ Smith denied Plaintiff's application in a written decision. (Tr. 14-28)

1

The record on which the ALJ's decision was based reflects that Plaintiff graduated from high school and has past relevant work as a dispatcher.  Plaintiff was born in 1961 and was 46 years old on her alleged disability onset date.  Upon consideration of the record, the ALJ found that Plaintiff had the following severe impairments: "depression and anxiety."  (Tr. 19).

The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. Despite these impairments, the ALJ determined that Plaintiff retains the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations: the job must involve simple task instructions in a work setting that does not require frequent interaction with others or strict production quotas. (Tr. 21).

Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that, while the Plaintiff is unable to perform her past relevant work, she can nonetheless perform jobs that exist in significant numbers in the national economy, including such jobs as cleaner, stock clerk and inspector.  Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB.  (Tr. 25).

The Appeals Council denied Plaintiff's request for review.  Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by (1) failing to find that her hypertension and carpal tunnel syndrome were severe impairments; (2) failing to find that her mental impairments were disabling; and (3) failing to provide a hypothetical question to the vocational expert that

2

accurately portrayed Plaintiff's impairments. Upon close inspection, the undersigned finds that Plaintiff's assignments of error are not well-taken.

### II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference

3

>from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

4

**B. Specific Errors**

*1. Evaluation of Plaintiff's Hypertension and Carpal Tunnel Syndrome*

Plaintiff's first assignment of error appears to assert that the ALJ erred in failing to find her hypertension and carpal tunnel syndrome to be severe impairments. A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting. 20 C.F.R. § 404.1521(b). Plaintiff is not required to establish total disability at this level of the sequential evaluation. Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Secretary of H.H.S.*, 736 F.2d 352, 357 (6th Cir.1984). An impairment will be considered nonsevere only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Secretary of H.H.S.*, 773 F.2d 85, 90 (6th Cir.1985) (citing *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir.1984)). The severity requirement is a "de minimus hurdle" in the sequential evaluation process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir.1988). *See also Rogers v. Commissioner*, 486 F.3d 234, 243 n. 2 (6th Cir.2007).

Here, at step-two of the sequential evaluation, the ALJ found Plaintiff's depression and anxiety were severe impairments. The ALJ found Plaintiff's alleged

5

hypertension, diabetes, and bilateral carpal tunnel syndrome were not severe. (Tr. 19-20). Plaintiff asserts that the ALJ improperly determined that her hypertension was not disabling because she had not been "hospitalized on a continuing basis." (Doc. 11 at 1). Plaintiff's contention misinterprets the ALJ's findings. Here, with respect to Plaintiff's hypertension, the ALJ noted that Plaintiff' takes medication for this condition and that the evidence of record did not show any end organ disease or exacerbation of her symptoms related to hypertension that required emergency medical care. (Tr. 19). Plaintiff has offered no evidence to rebut the ALJ's findings and/or to establish that her hypertension produced symptoms limiting her ability to perform work activity.

With respect to carpal tunnel syndrome, the ALJ also found that the record did not contain any objective evidence to establish that Plaintiff's carpal tunnel syndrome limits her ability to perform work related activity in any way. Plaintiff contends that she offered to submit evidence of a carpal tunnel syndrome diagnosis from Dr. Ram Singh at the hearing, but that the ALJ refused to consider it. (Doc. 11 at 2). However, as noted by the Commissioner, such evidence from Dr. Singh is contained in the record at Exhibit 11F. (Tr. 340).

In any event, to the extent that the record establishes that Plaintiff was in fact diagnosed with carpal tunnel syndrome, a mere diagnosis or catalogue of symptoms does not indicate functional limitations caused by the impairment. *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146,151 (6th Cir. 1990) (diagnosis of impairment does not indicate severity of impairment). Here, other than asserting that she has documentation that severe carpal tunnel syndrom has been identified and diagnosed,

6

Plaintiff does not offer any objective medical evidence establishing that her carpal tunnel resulted in any functional limitations.

Further, the mere existence of an impairment, however, does not establish that Plaintiff was significantly limited from performing basic work activities for a continuous period of time. *Despins v. Commissioner of Social Security,* 257 F. App'x 923, 930 (6th Cir. 2007) (citing *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)). When the record does not contain any reports, doctor statement's or other information regarding a plaintiff's physical limitations or the intensity, frequency, and duration of pain associated with a condition, the Sixth Circuit has regularly found substantial evidence to support a finding of no severe impairment. *See Long v. Apfel*, 1 F. App'x 326, 331 (6th Cir. 2001) (citing *Higgs,* 880 F.2d at 860; *Maloney v. Apfel*, No. 99-3081, 2000 WL 420700 (6th Cir. Apr. 14, 2000); *Foster v. Sec'y of Health & Human Servs.*, No. 88-1644, 1990 WL 41835 (6th Cir. Apr. 11, 1990)).

More importantly, even if the ALJ erred in not finding Plaintiff's hypertension and/or carpal tunnel syndrome to be a "severe" limitation, such error was harmless. This is because the regulations require that if one "severe" impairment exists, all impairments—severe or otherwise—must be considered in the remaining steps of the sequential analysis. 20 C.F.R. §§ 404.1523, 416.923, 404.1545(e). Thus, where an ALJ errs in finding a particular impairment "non-severe" in step two of the analysis, the error is harmless if the ALJ finds at least one severe impairment and continues to address each impairment in determining the claimant's RFC. *Meadows v. Comm'r of Soc. Sec.*, No. 1:07cv1010, 2008 WL 4911243, at *13 (S.D. Ohio 2008) (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). Here, the ALJ's

decision indicates that she properly considered and addressed all of Plaintiff's severe and non-severe impairments in determining her RFC. (Doc. 22, 21–22.) Accordingly, the undersigned finds that substantial evidence supports the ALJ's decision in this regard.

### 2. *Evaluation of Plaintiff's Mental Impairments*

Plaintiff's next assignments of error asserts that the ALJ erred by failing to find that her mental impairments are disabling. Specifically, Plaintiff assert that she has been diagnosed with major depressive disorder and has been prescribed multiple medications also associated with Bi-Polar disorder. (Doc. 11 at 2). Plaintiff further contends that the ALJ failed to take into consideration that four doctors concluded that she suffers from severe depression.[1] Plaintiff's assertions, however, fail to establish that the ALJ's decision is not substantially supported in this regard.

Here, the ALJ first considered whether Plaintiff's impairments met or equaled any of the listed impairments for mental disorders. The ALJ considered whether the "paragraph B" criteria were satisfied. As noted by the ALJ, to satisfy the "paragraph B" criteria, the mental impairment must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.

---

[1] In support of her claim of disabling depression, Plaintiff also asserts that "in these days and times when light is being shine on the most recent events of Newton Ct.[,] Chicago, Illinois, Aurora Colorado and numerous other incidents that have taken place due to mental illness." (Doc. 11). The undersigned is somewhat bothered by Plaintiff's reference to mass shootings, as such events have no bearing on Plaintiff's claim for disability benefits other than to highlight that those events were carried out by someone with a mental illness.

8

Upon review of the record,, the ALJ found that Plaintiff had mild restrictions of her activities of daily living and moderate difficulties in social functioning and in concentration, persistence or pace. The ALJ found that Plaintiff had experienced no episodes of decompensation (which have been of extended duration). Because Plaintiff's mental impairment did not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, the ALJ concluded that the "paragraph B" criteria were not satisfied. The ALJ also considered whether the "paragraph C" criteria were satisfied, and concluded that the evidence failed to establish the presence of the "paragraph C" criteria.

The ALJ then determined Plaintiff's mental RFC, finding that due to Plaintiff's mental impairments, she must be limited to a job that involves only simply task instructions in a work setting that does not involve frequent interaction with others or strict production quotas.[2] (Tr. 21). In reaching this conclusion, the ALJ found that the objective evidence of record did not support that Plaintiff cannot work because of her mental impairments. (Tr. 23).

The record indicates that Plaintiff was treated for her mental impairments by Dr. Eggerman between March 2007 through February 2008. Dr. Eggerman diagnosed depressive disorder, NOS, and assigned a Global Assessment of Functioning (GAF)[3]

---

[2] The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of impairments (SSR 96–8p).

[3] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., text rev. 2000). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent

score of 55-65.  He also prescribed psychiatric medications and recommend a sleep study to rule out sleep apnea.  Plaintiff has also been treating with Dr. Sethi, a psychiatrist, since June 2008.  Dr. Sethi diagnosed major depressive disorder and adjusted her medications.  Dr. Sethi's notes indicate that Plaintiff once reported that she was homicidal, but upon further questioning, corrected herself and said the wording was not used properly and she was just angry.  Dr. Sethi also reported that Plaintiff was doing well on her medications.  (Tr. 301-302).  The record also contains a mental RFC from a state agency psychologist who reviewed Plaintiff's medical file and concluded that she was no more than moderately impaired due to her mental symptoms.

The ALJ noted that at the hearing, Plaintiff alleged that she was hospitalized for 72 hours in 2009, yet there was no evidence in the record to support this allegation.  (Tr. 22).  The ALJ also noted that the treatment notes from her therapy sessions indicate that she talked primarily about her lawsuit for age and race discrimination with her employer and conflict with an employee. However, at the administrative hearing, Plaintiff was noncommittal about the circumstances under which she left her prior employment, and did not mention her race discrimination lawsuit.  The ALJ further noted that contrary to Plaintiff's alleged lack of motivation and concentration, she had sufficient motivation and persistence to put forth effort to pursue her long term disability claim, her age and race discrimination lawsuits, as well as small claims court lawsuit involving a grievance against an attorney with the State Bar Association.

---

inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death).  *Id.* at 34.  GAF scores between 55-65 indicates mild to moderate symptoms.

10

The ALJ also properly took into consideration Plaintiff's allegations of medication side effects. (Tr. 22-23). See § 404.1529(c)(3)(iv) (the ALJ may consider evidence concerning type, dosage, effectiveness and side effects of any medication used to alleviate the alleged pain or symptoms). Plaintiff testified that the side effects from her medication made her dizzy. (Tr. 22, 50). However, a progress note from Dr. R.M. Shenai in November 2009 showed that she was only having "occasional" dizzy spells (Tr. 22, 316). Plaintiff also reported to Dr. Sethi in October 2009 that she was tolerating this side effect fine. (Tr. 22, 299). Moreover, the vast majority of Dr. Eggerman's treatment notes revealed Plaintiff did not experience medication side effects. (Tr. 207-40).

The ALJ properly concluded that the evidence fails to support Plaintiff's allegations that she cannot work due to mental impairments. (Tr. 23). The ALJ noted that it was reported in treatment notes that Plaintiff responded well to her medications and none of her physicians reported she was unable to work in some capacity because of her depression and anxiety. (Tr. 24). Thus, the ALJ properly considered Plaintiff's testimony along with the relevant evidence and medical opinions discussed above, and performed her duty as the trier of fact in resolving any conflicts in the evidence. *See Perales*, 402 U.S. at 399.

*3. Vocational Errors*

Plaintiff further asserts that the ALJ's hypothetical question to the vocational expert did not fully account for Plaintiff's impairments. Plaintiff appears to asserts that she cannot sustain gainful activity due to her mental impairments.[4] Plaintiff further

---

[4] According to SSR 96-8p, an RFC is an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a "regular and continuing" basis. See SSR 96-8p at 28. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent

11

asserts that the ALJ's hypothetical failed to properly consider the limitations associated with her hypertension and carpal tunnel syndrome. Plaintiff's assertions are unavailing.

The Sixth Circuit has repeatedly made clear that a hypothetical question need only reference plaintiff's *credible* limitations; unsubstantiated complaints are not to be included in the question. *See McKenzie v. Commissioner of Soc. Sec.*, No. 99-3400, 2000 WL 687680, at * 4 (6th Cir. May 19, 2000). As outlined above, the ALJ reasonably determined that Plaintiff's carpal tunnel syndrome and hypertension were not severe impairments. Thus, the ALJ's failure to include any limitations association with such impairments was not erroneous. Furthermore, as detailed above, the ALJ properly determined that Plaintiff's mental impairments were not disabling. Here, the ALJ selected hypothetical questions which accurately described Plaintiff's limitations and the extent of her ability to perform work as supported by the evidence. The VE's testimony in response - setting forth numerous jobs that Plaintiff can still perform - thus constitutes substantial evidence that Plaintiff is not disabled. *See Hammond v. Apfel,* No. 99-1451, 2000 WL 420680, at *8 (6th Cir. Apr. 12, 2000)

### III. Conclusion and Recommendation

For the reasons explained herein, IT IS RECOMMENDED THAT Defendant's decision be found to be SUPPORTED BY SUBSTANTIAL EVIDENCE, and AFFIRMED, and that this case be CLOSED.

                                              s/Stephanie K. Bowman
                                             Stephanie K. Bowman
                                             United States Magistrate Judge

---

work schedule." *Id.; See also Sims v. Apfel*, 172 F.3d 879, 880 (10th Cir. 1999) (defining a "regular and continuing basis" as "8 hours a day, for 5 days a week, or an equivalent work schedule").

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

CAROLYN BYRD,                            Case No. 1:12-cv-455

    Plaintiff,                             Weber, J.
                                                                Bowman, M.J.
    v.

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).