UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CAROLYN BYRD,
       Claimant

      v.                                         Case No. 1:12-cv-455-HJW

COMMISSIONER OF SOCIAL SECURITY,

       Defendant

## ORDER

Claimant Carolyn Byrd, pro se, filed a complaint for judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner's final decision denying her application for a period of disability and disability insurance benefits ("DIB") (doc. no. 4). The Commissioner filed an answer (doc. no. 7). Claimant filed a "Statement of Specific Errors" (doc. no. 11); the Commissioner filed a brief in opposition (doc. no. 13); and claimant replied (doc. nos. 14, 15). The Magistrate Judge entered a Report and Recommendation (doc. no. 16) recommending that the Commissioner's final decision was supported by substantial evidence and should be affirmed. Claimant filed objections (doc. no. 20). Upon *de novo* review of the record, including careful consideration of the claimant's objections, the Court agrees with the Magistrate Judge's analysis, and therefore, will <u>overrule</u> the objections and <u>affirm</u> the Commissioner's final decision, for the following reasons:

1

**I. Background and Procedural History**

Carolyn Byrd ("claimant") was born August 15, 1961, graduated from high school and completed one year of college, is divorced with one adult daughter, speaks and understands English, and has past relevant work experience as a dispatcher and dispatch coordinator for Time Warner Cable from 1984-2007 (AR 108-09, 117, 125, 139-45, 165).[1] Claimant's IQ is average or above (AR 212, 311). Byrd was 46 years old when she allegedly became disabled on October 6, 2007, due to depression and anxiety. In February of 2008, she filed an application for DIB (AR 108-115). Byrd had insured status through December 31, 2012 (AR 19). Her claim was denied initially and upon reconsideration (AR 65-72). Upon request, an ALJ held a hearing on April 20, 2010, at which the claimant and a vocational expert ("VE") testified (AR 29-64). Claimant was represented by an attorney at the hearing.

Based on the RFC assessment and other evidence, the ALJ posed a series of hypothetical questions to the VE at each exertional level and included certain nonexertional limitations (i.e. "able to remember and follow simple tasks, instructions. . . able to maintain attention and concentration . . . in a work setting that does not require a lot of interaction with other [people] and does not require strict production quotas"). The VE testified that possible jobs within such

---

[1] At the administrative hearing, the vocational expert testified that such job would be classified as "sedentary semi-skilled" (doc. no. 8 at 62, AR 59, Hrg. Tr.).

**nonexertional restrictions at the sedentary unskilled level included clerical support worker (800 jobs locally, 144,000 nationally) and inspector (100 jobs locally, 90,000 nationally). At the light level, with the same nonexertional limitations, the VE identified cleaning jobs (2,000 jobs locally, 343,000 nationally) and stock clerk jobs (200 locally, over 251,000 nationally) (AR 59-62). At the medium level, with the same nonexertional limitations, the VE identified additional cleaning jobs (8,700 locally, 1,300,000 nationally) (AR 60-61).**

In the second hypothetical question, the ALJ included additional restrictions. The ALJ asked the VE to assume no "interaction with the general public" and indicated the nature of the job should be "non-confrontational" and require "no real decision-making" or "working in tandem with other people" (AR 61). The VE testified that a person with those additional restrictions could perform the same jobs identified above (Id.). With respect to the clerical support jobs, the VE explained that these were "backroom jobs" involving collating, sorting, and other such activities, without significant interaction with others (AR 62).

In the third hypothetical question, the ALJ asked the VE to further assume "poor reliability" and "poor ability to concentrate, complete work tasks, sustain a routine, or interact with others" (AR 62). The VE testified that these limitations would be work preclusive. This hypothetical was based on the assumption that claimant's testimony about her self-reported limitations was entirely credible, however, in light of the evidence, the ALJ found the claimant's testimony about

3

her limitations was not entirely credible.[2]

On June 18, 2010, the ALJ issued a decision denying benefits (AR 14-28). The ALJ found that Byrd's depression and anxiety were "severe impairments" within the meaning of the Social Security regulations, but that her hypertension, diabetes, and carpal tunnel were not severe impairments. The ALJ explained that Byrd's hypertension and diabetes were controlled with medication, that her diagnosis of carpal tunnel syndrome was not supported by documentation of any diagnostic testing, and that "there is no evidence to support functional limitations that would prevent basic work activities resulting from these conditions" (AR 22). See 20 C.F.R. § 416.921(b) (describing basic work activities).

The ALJ found that Byrd's impairments, alone or in combination, did not meet or equal any listed impairment (Finding 4). For purposes of the "paragraph B criteria" of Listings 12.04 and 12.06, the ALJ found that claimant had only "mild to moderate" restrictions in her activities of daily living and social functioning (see AR 20-23, observing that claimant was able to take care of her personal needs, maintain a home, manage her financial affairs, grocery shop, prepare a simple meal, and interacted with her daughter, mother, siblings, and neighbor). Claimant indicated that she took care of her mother and pet, had no problem with her own personal care, does laundry, watches television, can shop for 3-4 hours, visits family on a daily or weekly basis, talks on the telephone, and is able to handle a

---

[2] A hypothetical question need only reference claimant's credible limitations; unsubstantiated complaints need not be included. McKenzie v. Comm'r of Soc. Sec., 2000 WL 687680, at * 4 (6th Cir. (Ohio)).

savings account and use her checkbook (AR 22, 158-161).

None of Byrd's treating physicians opined that she was unable to work and their progress notes indicate that she responded well to conservative treatment, consisting of medication and counseling (AR 207-66, 285-93, 295-336). In her decision, the ALJ pointed out that although Byrd had suffered some emotional events, including multiple legal issues and the death of her father in October 2007, none of her physicians reported she was unable to work due to her depression and anxiety (AR 27).

The record also contains a mental RFC from a state agency psychologist who reviewed claimant's medical file and concluded that Byrd had only mild to moderate functional limitations due to any mental symptoms. State agency consultant, Mel Zwissler, Ph.D., opined in April 2008 that Byrd was no more than moderately impaired due to her mental symptoms, that she was capable of remembering and following simple task instructions, and able to maintain attention and concentration, but she would do best in a work setting without a lot of interactions with others or strict production quotas (AR 23, 281-84). A second state agency consultant, Marianne Collins, Ph.D, reviewed and agreed with this assessment in October 2008 (AR 23, 26, 294).[3]

Consistent with the RFC and state agency review (Exs. 4F/3, 7F), the ALJ

---

[3] State agency medical consultants are considered experts in the Social Security disability program and their opinions were entitled to appropriate weight to the extent they are supported by the evidence in the record. 20 C.F.R. § 404.1527(f)(2)(i).

determined that Byrd had the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels, but with the following nonexertional limitations: the job must involve simple task instructions in a work setting that does not require frequent interaction with others or strict production quotas" (AR 21-23, Findings 5, 6). Based on the evidence, the ALJ found that the claimant's statements concerning the intensity, persistence and limiting effects" of her symptoms were less than fully credible (Finding 6).[4]

After considering the record as a whole, including the testimony and claimant's RFC and vocational profile, the ALJ found that claimant could not perform her past relevant work as a dispatch coordinator (Finding 7), but could still perform jobs that exist in significant numbers in the national economy (Finding 11). The ALJ determined that the claimant had not shown that she was disabled, as defined by of the Social Security regulations (Finding 12). The

---

[4] The ALJ explained her credibility finding and noted some inconsistencies in Byrd's responses (AR 22 "these issues suggest in part non-medical reasons for her leaving work"). The ALJ noted that at the hearing, Byrd was very noncommittal when asked about the circumstances under which she left her prior employment; what employee she was hostile towards; and did not mention the discrimination lawsuit she had filed, even though the treatment notes discussed these issues. When asked if she had been disciplined or fired from her job, Byrd inconsistently responded "No" (AR 163) and "Yes" (AR 176; 310 indicating she was "pursuing a lawsuit alleging wrongful termination"). See 20 C.F.R. § 404.1529(c)(4) (in evaluating a claimant's subjective statements, consideration is given to conflicts between claimant's statements and other evidence); Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997) ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence."). With respect to her social functioning, and when asked if she spends time with others, Byrd indicated "No" (AR 161 "I don't socialize") but also inconsistently indicated she had close family relationships and visited with family and friends on a daily or weekly basis (AR 179, ¶ 2).

**Appeals Council denied further review, thus making the ALJ's decision the final decision of the Commissioner.⁵**

**On July 5, 2012, claimant filed a form complaint for judicial review, without specifying any alleged errors by the ALJ. The Court issued a Show Cause Order, and on February 19, 2013, Byrd filed a pro se "Statement of Specific Errors" (doc. no. 11). Byrd argued that because the ALJ found her depression and anxiety to be severe impairments at step two, "this conclusion alone should have resulted in a determination granting [her] benefits" (doc. no. 11 at 1). She complained that the ALJ "failed to consider" the fact that Byrd had obtained disability benefits from her employer (Id. at 4). She alleged that the ALJ "refused to allow" evidence of her carpal tunnel syndrome ("CTS") and disregarded such evidence (Id. at 2). She complained that she had side effects from her medication.⁶ She complained that a "job search would require an extremely geographically wide and deep search for an extremely narrow job opportunity" (Id. at 3).⁷**

**The Commissioner filed a brief in opposition (doc. no. 13), asserting that**

---

⁵ On administrative appeal, Byrd had the additional assistance of Michael Graves, Certified Senior Advisor (AR 199, suppl. appeal response, October 28, 2010).

⁶ Although claimant complained that her medication made her dizzy (AR 22, 50), she reported to Dr. Hanish Sethi in October 2009 that she was tolerating this occasional side effect "fine" (AR 22, 299). The majority of Dr. Kevin Eggerman's progress notes reflect that claimant did not experience side effects from her medication (AR 207-40). Dr. R. M. Shenai also indicated in progress notes in November 2009 that Byrd was dizzy only "occasionally."

⁷ The Commissioner is not required to show that significant numbers of jobs exist "within local commuting area." <u>Roby v. Comm'r of Soc. Sec.</u>, 48 Fed. Appx. 532, 539 n.3 (6th Cir. 2002).

claimant's contentions were meritless. The Commissioner pointed out that the ALJ used the correct analytical framework and *did* admit Dr. Singh's letter that mentioned claimant's possible CTS. The Commissioner pointed out that the record was devoid of evidence reflecting any functional limitations due to CTS or hypertension, and thus, the ALJ properly found that these were not "severe" impairments. The Commissioner pointed out that the ALJ's hypothetical question to the VE accurately portrayed all of Byrd's limitations that were established by evidence. The Commissioner asserted that the ALJ properly found that Byrd's mental impairments were not "disabling" because the evidence indicated that she could still perform a significant number of jobs within her restrictions. After reviewing the briefs and administrative record, the Magistrate Judge recommended that the Commissioner's final decision was supported by substantial evidence and should be affirmed (doc. no. 16).

The claimant filed written objections, alleging that 1) she had obtained disability benefits from her employer and therefore should also receive federal disability benefits; 2) that the ALJ did not "allow her to submit the [CTS] documentation from Nerologish (sic) Sr. Shingh (sic);" and 3) "there are two other independent doctors Shirley Stephens of which she was a patient for several years as well as Edward Wanatake (sic) of which where (sic) totally ommitted (sic) from the file" (doc. no. 20). Byrd concludes that she is entitled to disability benefits.

## II. Standard of Review

Judicial review of the Commissioner's final decision is limited to

8

determining whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); White v. Comm'r of Soc. Sec., 572 F.3d 272, 281 (6th Cir. 2009). The ALJ's decision must be affirmed if it is supported by substantial evidence in the record as a whole. Kirk v. Sec. of H.H.S., 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Lindsley v. Comm'r of Soc. Sec., 560 F.3d 601, 604 (6th Cir. 2009) (quoting Richardson, 402 U.S. at 401); Casey v. Sec. of H.H.S., 987 F.2d 1230, 1233 (6th Cir. 1993) ("plaintiff has the ultimate burden of establishing the existence of a disability"). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).

### III. Discussion of Objections

First, claimant objects that the Magistrate Judge (and ALJ) "ignored" the fact that Byrd, prior to filing for DIB, was on disability from her employer. Byrd suggests that her prior receipt of benefits through her employer means she should automatically be entitled to federal disability benefits. This is not so. The claimant's suggestion is based on a misunderstanding of the law. An employer's benefits are governed by the terms of the applicable employment contract, whereas federal benefits are governed by the Social Security regulations. In other words, claimant's receipt of benefits from her former employer does not guarantee entitlement to benefits under the Social Security regulations. Claimant also

9

misunderstands that the threshold finding of a "severe" impairment at step two of the analysis does not by itself entitle her to federal disability benefits. To obtain federal disability benefits, claimant must present sufficient evidence to show that, during the relevant time period, she was "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). As the Magistrate Judge recommended, the ALJ set forth the correct regulatory framework for deciding whether the claimant had shown that she was entitled to disability benefits under the Social Security regulations. This objection lacks merit.

Second, claimant objects that the ALJ "failed to allow her to submit the documentation from Nerologish (sic) Dr. Shingh (sic) which would have substantiated the fact that she did indeed have severe bilateral carpel tunnel" (doc. no. 20 at 1). This is the same argument previously raised by claimant in her Statement of Errors. Simply restating prior arguments does not amount to a "specific objection." See, e.g., Harris v. Morgan, 2012 WL 2505838 at *3 (N.D. Ohio) (an objection that merely "summarizes what has been presented before" is not a "specific objection"); Holl v. Potter, 2011 WL 4337038, *1 (S.D. Ohio) (same).

In any event, the record reflects that claimant's assertion is factually incorrect. As the Commissioner pointed out, the ALJ did not "fail to allow" claimant to submit this evidence. At the hearing, claimant's attorney observed that

"carpal tunnel" had been mentioned in several office notes and asked Byrd about it (AR 58 "So, somebody's mentioned to you, you may have carpal tunnel"). Claimant had not submitted any documentation from Dr. Singh prior to the hearing. Despite this, the ALJ asked about any supporting documentation and Dr. Singh's letter was then admitted into the administrative record. This evidence may be found at Exhibit 11F (AR 340, Dr. Singh's Letter of November 9, 2009).

Contrary to claimant's allegation, the ALJ <u>did</u> consider Dr. Singh's letter, which merely indicated the evidence was "suggestive of carpal tunnel syndrome." In her written findings, the ALJ acknowledged Dr. Singh's tentative diagnosis, but noted that it was unsupported by any documentation of diagnostic test results (i.e., no EMG test results, no positive Phalen's or Tinsel's) (AR 19). The ALJ also pointed out that there no objective evidence to establish the severity of the condition (e.g., claimant had no muscle atrophy, did not wear supportive splints, and did not have surgery for such condition) (<u>Id</u>.). Dr. Singh's letter indicated only that the claimant was treated conservatively with medication. The ALJ observed that the record contained "no evidence to support functional limitations that would prevent basic work activities" resulting from this condition (<u>Id</u>.). See 20 C.F.R. § 404.1520(c) (a severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities). The ALJ found that the evidence did not show that claimant's CTS amounted to a severe impairment under the regulations. <u>Despins v. Comm'r of Soc. Sec.</u>, 257 Fed. Appx. 923, 930 (6th Cir. 2007) ("[w]hen doctors' reports contain no information

11

regarding physical limitations or the intensity, frequency, and duration of pain associated with a condition, this court has regularly found substantial evidence to support a finding of no severe impairment"); Long v. Apfel, 1 Fed.Appx. 326, 331 (6th Cir. 2001); Higgs v. Bowen, 880 F.2d 860 (6th Cir. 1988).

The Magistrate Judge correctly pointed out that "a mere diagnosis" does not indicate functional limitations caused by the impairment (doc. no. 16 at 6) (citing Young v. Sec'y of H.H.S., 925 F.2d 146,151 (6th Cir. 1990)). The ALJ noted that even claimant's counsel could not point to any objective evidence in the record to show that Byrd's carpal tunnel was limiting in any way (AR 19, 55). See Foster v. Bowen, 853 F.2d 483, 489 (6th Cir. 1988) (a mere diagnosis says nothing about the severity of any resulting functional limitations); Despins, 257 Fed. Appx. at 930 ("the mere existence of those impairments, however, does not establish that Despins was significantly limited from performing basic work activities").

Given that there was no evidence to support any functional limitations from CTS that would prevent Byrd from performing basic work activities, the ALJ found that the claimant failed to meet this threshold step and that the claimant's alleged carpal tunnel was not a severe impairment (AR 20). It is claimant's burden to submit evidence to prove her disability case at this step. See 42 U.S.C. § 423(d)(1)(A) (claimant must prove her case through the fourth step). Moreover, the Magistrate Judge further pointed out that the ALJ had properly considered and addressed claimant's severe *and* non-severe impairments in determining her RFC

12

(doc. no. 16 at 7-8).[8]

Finally, claimant indicates that she wishes to "raise the fact that there were two other independent doctors Shirley Stephens of which she was a patient for several years as well as Edward Wanatake (sic) of which where (sic) totally ommitted (sic) from the file" (doc. no. 20 at 2). Claimant is mistaken -- the documentation by these two counselors was <u>not</u> "totally omitted" from the file. In fact, the progress notes for these psychotherapists (Edward Wantuck, LISW, and Shirley Stephens, LISW) were submitted and are part of the administrative record (AR 176-81, 305-11).

Even supposing that such documentation had been omitted, it is the claimant's responsibility to provide evidence to support her claim. She acknowledged this on her initial application (AR 109, "I understand that I must provide medical evidence about my disability, or assist the Social Security administration in obtaining this evidence."). In any event, this evidence was included in the record and is consistent with the ALJ's conclusion that Byrd did not have functional limitations of disabling severity. For example, the Daily Activities Questionnaire on March 24, 2008, reflects that Byrd had no behaviors or deficits that prevented independent living (AR 176). On July 31, 2008, the same psychotherapist indicated that Byrd was able to shop as needed, presented as

---

[8] Several treatment notes indicate that plaintiff weighed 230 pounds (at height 5'6") and had gained weight (AR 220, 287). Claimant did not raise this issue, and the record does not reflect that she had any resulting functional limitations. Even assuming arguendo that she might be precluded from medium or light level jobs, the VE identified numerous jobs at the sedentary level within her restrictions.

13

"well-kempt", had "no problem" driving or taking public transportation, and was able to do household chores (although she noted that Byrd lacked motivation to do them "beyond minimal" (AR 177). The record also reflects various notes from claimant's therapy appointments with Edward Wantuck in 2008-2009. For example, Wantuck observed on January 12 and March 12, 2009 that despite her complaints, Byrd was "friendly, spontaneous, good eye contact, fairly well-groomed . . . thought process organized and goal oriented" (AR 305, 308). The claimant's objection that the notes of these two psychotherapists were "omitted" from the administrative record is simply inaccurate.

### IV. Conclusion

In light of the claimant's pro se status, the Court has carefully reviewed claimant's objections and construed them liberally. Upon de novo review of the record, the Court finds the objections to be without merit. The Magistrate Judge has accurately set forth the controlling principles of law and properly applied them to the particular facts of this case. The Court therefore adopts, and incorporates by reference herein, the Magistrate Judge's Report and Recommendation. The Court agrees with the Magistrate Judge's recommendation that the Commissioner's final decision is supported by substantial evidence and must be affirmed.

### V. Oral Argument Not Warranted

Local Rule 7.1(b)(2) provides that courts have discretion whether to grant requests for oral argument. The parties have fully briefed the relevant issues. The

**Court finds that oral argument is not warranted. <u>Himes v. United States</u>, 645 F.3d 771, 783-84 (6th Cir. 2011); <u>Yamaha Corp. of Am. v. Stonecipher's Baldwin Pianos & Organs</u>, 975 F.2d 300, 301-02 (6th Cir. 1992); <u>Schentur v. United States</u>, 4 F.3d 994, 1993 WL 330640 at \*15 (6th Cir. (Ohio)) (observing that district courts may dispense with oral argument on motions for any number of sound judicial reasons).**

**Accordingly, the Court <u>OVERRULES</u> the claimant's objections, <u>ADOPTS</u> the Report and Recommendation, and <u>AFFIRMS</u> the final decision of the Commissioner; this case is DISMISSED and TERMINATED on the docket of this Court.**

**IT IS SO ORDERED.**

     s/Herman J. Weber  
**Herman J. Weber, Senior Judge**  
**United States District Court**
